1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                             DISTRICT OF NEVADA

8                                    * * *

9   DARREN GABRIEL LACHANCE,                   Case No. 3:17-cv-00689-MMD-WGC

10                           Petitioner,                        ORDER

11       v.

12  HAROLD WICKHAM, *et al.*,

13                           Respondents.

14

15          This habeas matter pursuant to 28 U.S.C. § 2254 comes before the Court on a

16  second motion for appointment of counsel by Petitioner Darren Gabriel LaChance

17  ("LaChance" or "Petitioner"). (ECF No. 5.)

18  **I.      DISCUSSION**

19          The Court denied LaChance's first motion for appointment of counsel without

20  prejudice because he: (a) had not adequately established his financial eligibility for

21  appointment of counsel, 18 U.S.C. § 3006A(a)(2)(B); and (b) otherwise had not

22  adequately established that the interests of justice required the appointment of counsel.

23  The Court noted in particular in the latter regard, the conclusory assertion that

24  appointment of the Federal Public Defender was necessary to investigate a "key

25  percipient witness's testimony" was insufficient. (ECF No. 4.)

26          Following review of the second motion, the Court is not persuaded that the

27  interests of justice require the appointment of counsel even if LaChance otherwise is

28  financially eligible for such appointment.

1   At the outset on this issue, it does not appear that LaChance suffers any incapacity

2   that would impair his ability to pursue his petition *pro se.* While almost any lay litigant

3   perhaps would be better served by the appointment of counsel, that is not the standard

4   for appointment.

5   LaChance asserts that he could not have prepared the petition on his own "as he

6   is assigned to the Warm Springs Correctional Center and as the case has complex and

7   factual and legal issues." (ECF No. 5 at 2.) He then cites to Judge Reed's opinion for the

8   Court in *Koerschner v. Warden*, 505 F. Supp. 2d 949 (D. Nev. 2007). LaChance's most

9   recent filing reflects that he instead currently is incarcerated at Ely State Prison. Whatever

10  point that LaChance was attempting to make regarding the Warm Springs facility in the

11  counsel-prepared motion, that point now is moot.[1] Nor are the issues presented in the

12  petition of such complexity that LaChance would not be able to pursue them adequately

13  *pro se,* particularly given that he already has had the assistance of counsel in drafting the

14  federal petition.

15  Nor is the Court persuaded that appointment of counsel is warranted to locate,

16  interview, and present the testimony of an allegedly key percipient witness in support of

17  an unexhausted claim of ineffective assistance of trial counsel.

18  As backdrop, LaChance currently stands convicted, pursuant to a jury verdict, of

19  domestic battery by strangulation, domestic battery causing substantial bodily harm,

20  possession of a controlled substance for the purpose of sale, false imprisonment, and

21  unlawful taking of a motor vehicle. (ECF No. 1 at 33.)[2] He was further adjudicated and

22  sentenced as a habitual criminal. (*Id.* at 37.)

23  ///

---

24  [1]*Koerschner* concerned an appointment of counsel based upon the state of the
25  paging system used for law library access at Lovelock Correctional Center circa 2007.
    LaChance presented no specifics that would suggest how *Koerschner* is pertinent to the
26  Warm Springs facility in 2018. In all events, the point that he attempted to make now is
    moot with respect to that facility.
27
    [2]A conviction also of possession of a controlled substance was vacated on direct
28  appeal on double jeopardy grounds. (*See* ECF No. 1 at 41–46.)

In the present motion, Petitioner maintains: (1) he committed only misdemeanor domestic battery as opposed to "felony domestic battery" (i.e., domestic battery causing substantial bodily harm); (2) he "was set up in the marijuana charge by Starleen Lane, the domestic battery victim;" (3) CJ Coultre – identified as "Conrad Coultre (CJ)" in the state supreme court's opinion (ECF No. 1 at 34) – "should have" knowledge about both offenses; (4) "[w]hat started this incident resulting in the battery is I caught Ms. Lane, my then-girlfriend cheating on me with Mr. Coultre;" (5) LaChance "believe[s]" Coultre has knowledge of "[w]hether Star Lane suffered any kind of substantial bodily harm after I hit her" and "[w]hether Star Lane set me up with the marijuana, to retaliate for the battery, or otherwise brought the marijuana to Motel 6 where the police seized it;" (6) "[w]hat makes me curious is after I went to prison, Mr. Coultre wrote me a letter apologizing to me;" and (7) LaChance asked both trial counsel and state post-conviction counsel to interview Coultre, but neither one did.

In light of the trial evidence, the foregoing does not tend to establish that federal habeas counsel would be able to viably establish that state post-conviction counsel provided inadequate assistance of counsel for purposes of *Martinez v. Ryan*, 566 U.S. 1 (2012), in failing to develop and present a claim of ineffective assistance of trial counsel based upon a failure to develop and present Coultre's testimony.

The state supreme court's direct appeal opinion reflects that the domestic battery—part of which a neighbor observed after Lane escaped outside, occurred after "CJ" Coultre had left for work. Therefore, he did not observe the battery itself. (ECF No. 1 at 34–35.) A point of contention on direct appeal was whether, *inter alia*, LaChance's battery of Lane caused prolonged physical pain. (*Id.* at 39–41.) Coultre would not be a competent witness to contest the hospital's medical records that Lane was treated after the battery for hemorrhaging of the ear and multiple contusions and welts on her face, back, legs, feet and ear, with reported pain in her ear and tenderness in her neck, abdomen, pelvis, and extremities. (*See id.* at 35, 40.) Lane testified that she thereafter did not obtain further medical treatment due to a lack of medical insurance. (*Id.* at 35.) At

best, Coultre—assuming that he would testify as LaChance now "believes" he would testify—theoretically would be able to testify only that he, a lay witness, did not observe Lane in pain in the following days and/or that she made statements to him that contradicted her claims of continuing pain and injury in her trial testimony. The unsubstantiated prospect that trial counsel failed to present any such literally "he said, she said" contradictory testimony does not tend to establish that state post-conviction counsel provided inadequate assistance in failing to raise an ineffective-assistance claim on this basis. LaChance would not be able to establish resulting prejudice on the underling ineffective-assistance claim in that there was not a reasonable probability that such testimony would have led to a different outcome on the domestic battery charge at trial.[3]

With regard to the alleged marijuana set up, LaChance was arrested with 4.6 pounds of marijuana—over two kilos of marijuana—along with sundry paraphernalia typically used in the distribution of marijuana. The evidence at trial reflected in pertinent part that: (1) Lane was with LaChance at a Motel 6 subsequent to the domestic violence incident discussed above; (2) Lane encountered the police, who had her phone tapped, when she stepped out of the motel room to smoke a cigarette; (3) she consented to a search of the motel room; (4) when officers searched the room, which was occupied by LaChance, about ten minutes later they found marijuana floating in the toilet and plastic bags; (5) after a canine alert, the police then obtained a warrant to search LaChance's duffel bags for controlled substances; and (6) they then found the 4.6 pounds of marijuana and several scales, which typically are used when breaking up pounds or kilos into retail quantities that then are sold in plastic bags. (*See* ECF No. 1 at 36.)

///

---

[3]The Court notes in passing that the Nevada Department of Corrections inmate locator reflects that a Conrad Joseph "CJ" Coultre was incarcerated under inmate number 1056721 in approximately 2010 to 2011 on a conviction for third offense sale or distribution of a schedule 1 and 2 controlled substance. The inmate locator further reflects that Coultre is 38 and LaChance is 34. *See* http://167.154.2.76/inmatesearch/form.php. Assuming that there is not more than one Conrad Joseph "CJ" Coultre from the area who is close in age to Petitioner, Coultre's testimony further would have been subject to impeachment based upon his prior conviction or convictions.

4

1    Prior federal drug cases would suggest that two kilos of marijuana, even if still in

2    compressed brick form, tends to be bulky, expensive, and rather odorous (as reflected by

3    the canine alert). Petitioner accordingly posits that, if Coultre testifies as LaChance

4    "believes" he would, Coultre would testify that he somehow had knowledge, that did not

5    also inculpate himself, that Lane obtained over two kilos of marijuana and snuck the bulky

6    marijuana, along with drug distribution paraphernalia such as baggies and scales, into a

7    Motel 6 motel room and secreted it in LaChance's duffel bag without him noticing it or

8    smelling it.

9    Over and above the weak probative value of any such testimony, such a "set up"

10   defense further would give rise to a substantial risk of opening the door to the admission

11   of other crimes evidence, including LaChance's 2002 conviction for possession of more

12   than 4 but less than 14 grams of a schedule I controlled substance, his 2007 conviction

13   for trafficking in a controlled substance, and his 2012 conviction for possession of a

14   controlled substance based upon a 2007 offense. (*See* ECF No. 1 at 51–52.)

15   There thus is no reasonable prospect that state post-conviction counsel provided

16   inadequate assistance for purposes of *Martinez* in failing to raise an ineffective-assistance

17   claim premised on trial counsel's failure to pursue such a "set up" defense based upon

18   Coultre's supposed testimony. LaChance would not be able to establish resulting

19   prejudice on the underling ineffective-assistance claim in that there was not a reasonable

20   probability that such testimony would have led to a different outcome at trial.[4]

21   The Court thus is not persuaded that appointment of counsel is warranted to

22   investigate and pursue an unexhausted claim of ineffective assistance of trial counsel

23   based upon a failure to develop and present testimony by Conrad "CJ" Coultre. Petitioner

24

25   [4]Moreover, if as noted, Coultre also had been previously convicted of drug
trafficking charges, his testimony as to the set up would be subject to impeachment based
26   upon his prior conviction or convictions. In that event, the star defense witness called to
establish that a defendant with prior drug trafficking offenses was set up on the current
27   drug trafficking charge himself would also be a convicted drug trafficker. Such is not the
stuff of which potentially viable trial defenses, or ineffective-assistance claims, are made.
28

1  has failed to establish a reasonable prospect that there is a potentially viable claim in this

2  regard that state post-conviction counsel failed to pursue through inadequate assistance.[5]

3      The second motion for appointment of counsel therefore will be denied, and the

4  matter will be served for a response.

5  **II.     CONCLUSION**

6      It is therefore ordered that Petitioner's second motion for appointment of counsel

7  (ECF No. 5) is denied.

8      It is further ordered that that the Clerk of Court will informally electronically serve

9  the Nevada Attorney General with a copy of the petition and this order, along with

10  regenerated notices of electronic filing of the remaining filings herein.

11      It is further ordered that respondents will have sixty (60) days from entry of this

12  order within which to respond to the petition. Any response filed will comply with the

13  remaining provisions below, which are tailored to this particular case based upon the

14  Court's screening of the matter and which are entered pursuant to Habeas Rule 4.

15      It is further ordered that any procedural defenses raised by Respondents in this

16  case will be raised together in a single consolidated motion to dismiss. In other words,

17  the Court does not wish to address any procedural defenses raised herein either in

18  *seriatim* fashion in multiple successive motions to dismiss or embedded in the answer.

19  Procedural defenses omitted from such motion to dismiss will be subject to potential

20  waiver. Respondents will not file a response in this case that consolidates their procedural

21  defenses, if any, with their response on the merits, except pursuant to 28 U.S.C. §

22  2254(b)(2) as to any unexhausted claims clearly lacking merit. If Respondents do seek

23

24      [5]The Court further notes that LaChance presents nothing more than supposition that Coultre even would testify as he "believes" that he would testify. The fact that Coultre allegedly sent LaChance a letter apologizing to him hardly suggests that Coultre would testify to the specifics that LaChance now asserts. LaChance maintains that the domestic battery incident began because he caught Lane with Coultre. The mere fact that Coultre apologized after the romantic dalliance with LaChance's girlfriend does not signify that Coultre would testify to the specifics that LaChance asserts. One does not necessarily follow the other.

25

26

27

28

dismissal of unexhausted claims under § 2254(b)(2): (a) they will do so within the single motion to dismiss not in the answer; and (b) they will specifically direct their argument to the standard for dismissal under § 2254(b)(2) set forth in *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005). In short, no procedural defenses, including exhaustion, will be included with the merits in an answer. All procedural defenses, including exhaustion, instead must be raised by motion to dismiss.

It further is ordered that, in any answer filed on the merits, Respondents will specifically cite to and address the applicable state court written decision and state court record materials, if any, regarding each claim within the response as to that claim.

It further is ordered that Respondents will file a set of state court exhibits relevant to the response filed to the petition, in chronological order and indexed as discussed, *infra*.

It further is ordered that all state court record exhibits filed herein will be filed with a separate index of exhibits identifying the exhibits by number. The CM/ECF attachments that are filed further will be identified by the number or numbers of the exhibits in the attachment. The purpose of this provision is so that the Court and any reviewing court thereafter will be able to quickly determine from the face of the electronic docket sheet which numbered exhibits are filed in which attachments.

It further is ordered that counsel additionally will send a hard copy of all exhibits filed to, for this case, the Reno Clerk's Office.

It further is ordered that Petitioner will have thirty (30) days from service of the answer, motion to dismiss, or other response to mail a reply or response to the Clerk of Court for filing.

It further is ordered that all requests for relief must be presented by a motion satisfying the requirements of Rule 7(b) of the Federal Rules of Civil Procedure. The Court and the Clerk do not respond to letters and do not take action based upon letters, other than a request for a status check on a matter submitted for more than ninety days. Further, neither the Court nor the Clerk can provide legal advice or instruction.

1         It further is ordered that the Clerk will update Petitioner's current address on the

2    docket sheet prior to issuing notices of electronic filing of this order. (*See* ECF No. 7.)

3         DATED THIS 3rd day of August.

4

5    _____
     MIRANDA M. DU

6    UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28